[Cite as *State v. Corson*, 2015-Ohio-5332.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | Case No. 15CA4 |
| Plaintiff-Appellee, | : | |
| | : | |
| vs. | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| ERIC J. CORSON, | : | |
| | : | |
| Defendant-Appellant. | : | **Released: 12/10/15** |

_____

APPEARANCES:

Jesse A. Atkins, Atkins and Atkins, Attorneys at Law, LLC, Circleville, Ohio, for Appellant.

Judy C. Wolford, Pickaway County Prosecutor, and Heather MJ Armstrong, Assistant Pickaway County Prosecutor, Circleville, Ohio, for Appellee.

_____

McFarland, A.J.

{¶1} Eric J. Corson appeals his conviction in the Pickaway County Court of Common Pleas after a jury found him guilty of one count of possession of cocaine, R.C. 2925.11(A)(C)(4)(a), a fifth-degree felony. On appeal, Appellant asserts his conviction was against the manifest weight of the evidence. Upon review, we find no merit to Appellant's argument. The trial court did not err. Accordingly, we overrule Appellant's sole assignment of error and affirm the judgment of the trial court.

FACTS

{¶2} On August 3, 2014, Appellant was indicted on one count of possession of cocaine, a violation of R.C. 2925.11(A)(C)(4)(a), a felony of the fifth degree. The indictment arose from activities which occurred on or about February 29, 2012, when Appellant made contact with Sergeant Dillard, a 20-year veteran of the Ohio State Highway Patrol, during a lawful traffic stop for speeding on S.R. 104 in Pickaway County.

{¶3} During the stop, Sgt. Dillard detected the odor of marijuana coming from the vehicle. Appellant had one passenger, Zanisha Marshall, his girlfriend or fiancé. Both Appellant and Marshall were removed from the car and it was searched. Eventually, Marshall acknowledged having a baggie of marijuana in her bra and a baggie of cocaine in her vagina. The items were removed. Both individuals were brought to the Pickaway County Jail and charged with drug offenses. The suspected drugs were sent to the Ohio State Highway Patrol Crime Lab and tested. The baggie of suspected cocaine tested positive for 2.73 grams of crack cocaine.

{¶4} On December 2, 2014, Appellant was arraigned. He pleaded not guilty. At the time of the arraignment, Appellant was incarcerated. The matter proceeded to jury trial on February 19, 2014. The trial returned a verdict of guilty.

{¶5} Appellant was sentenced to a ten-month term of imprisonment, to be served consecutively to time he was already serving for an offense arising out of Franklin County, Ohio. Therefore, Appellant's original release date of July 13, 2015 on the Franklin County offense had been delayed until May 13, 2016 due to the addition of the Pickaway County conviction.

{¶6} This timely appeal followed. Where relevant, additional facts will be related below.

## ASSIGNMENT OF ERROR

"I. THE APPELLANT'S CONVICTION FOR POSSESSION OF DRUGS, A FELONY OF THE FIFTH DEGREE, WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

## A. STANDARD OF REVIEW

{¶7} When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence, and consider the credibility of witnesses. The reviewing court must bear in mind however, that credibility generally is an issue for the trier of fact to resolve. *State v. Wickersham,* 4th Dist. Meigs No. 13CA10, 2015-Ohio-2756, ¶ 25; *State v. Issa,* 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy,* 4th Dist. Ross No. 07CA2953, 2008-Ohio-1744, ¶ 31. " 'Because the trier of

fact sees and hears the witnesses and is particularly competent to decide

"whether, and to what extent, to credit the testimony of particular

witnesses," we must afford substantial deference to its determinations of

credibility.' " *Barberton v. Jenney,* 126 Ohio St.3d 5, 2010-Ohio-2420, 929

N.E.2d 1047, ¶ 20, quoting *State v. Konya,* 2nd Dist. Montgomery No.

21434, 2006-Ohio-6312, ¶ 6, quoting *State v. Lawson,* 2nd Dist.

Montgomery No. 16288 (Aug. 22, 1997). As explained in *Eastley v.*

*Volkman,* 132 Ohio St.3d 328, 972 N.E.2d 517:

> " '[I]n determining whether the judgment below is manifestly
> against the weight of the evidence, every reasonable intendment
> must be made in favor of the judgment and the finding of facts.
>
> * * *
>
> If the evidence is susceptible of more than one construction, the
> reviewing court is bound to give it that interpretation which is
> consistent with the verdict and judgment, most favorable to
> sustaining the verdict and judgment.' " *Eastley* at ¶ 21, quoting
> *Seasons Coal Co., Inc. v. Cleveland,*10 Ohio St.3d 77, 80, 461
> N.E.2d 1273 (1984), fn.3, quoting 5 Ohio Jurisprudence 3d,
> Appellate Review, Section 60, at 191-192 (1978).

{¶8} Thus, an appellate court will leave the issues of weight and

credibility of the evidence to the fact finder, as long as a rational basis exists

in the record for its decision. *State v. Picklesimer,* 4th Dist. Pickaway No.

11CA9, 2012-Ohio-1282, ¶ 24; accord *State v. Howard*, 4th Dist. Ross No.

07CA2948, 2007-Ohio-6331, ¶ 6 ("We will not intercede as long as the trier

of fact has some factual and rational basis for its determination of credibility and weight.").

{¶9} Once the reviewing court finishes its examination, the court may reverse the judgment of conviction only if it appears that the fact-finder, when resolving the conflicts in evidence, " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered .' " *Wickersham, supra,* at 26, quoting *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983). A reviewing court should find a conviction against the manifest weight of the evidence only in the " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Id.,* quoting *Martin*, 20 Ohio App.3d at 175; *State v. Lindsey,* 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000).

## B. LEGAL ANALYSIS

{¶10} Appellant was convicted of R.C. 2925.11(A)(C)(4)(a), possession of cocaine, which provides:

> (A) No person shall knowingly obtain, possess, or use a
> controlled substance or a controlled substance analog.
>
> * * *
>
> (C) Whoever violates division (A) of this section is guilty of
> one of the following:

* * *

(4) If the drug involved in the violation is cocaine or a
compound, mixture, preparation, or substance containing
cocaine, whoever violates division (A) of this section is guilty
of possession of cocaine.  The penalty for the offense shall be
determined as follows:

(a) Except as otherwise provided in division (C)(4)(b), (c), (d),
(e), or (f) of this section, possession of cocaine is a felony of the
fifth degree, and division (B) of section  2929.13 of the Revised
Code applies in determining whether to impose a prison term
on the offender.

{¶11}  Appellant contends that the jury had to either find Appellant

*actually* or *constructively* possessed the cocaine that was discovered in

Zanisha Marshall's vagina on the date of their arrest.  Appellant argues since

the jury most likely did not determine he actually possessed the cocaine, it

may be assumed that the jury determined he constructively possessed it.

Appellant points out the trial court's instructions to the jury did not define

either the words "actual" or "constructive."  Appellant concludes it appears

that the jury was confused about the definitions and therefore lost its way in

reaching a guilty verdict.

{¶12}  Appellee concedes that Appellant did not actually possess the

crack cocaine, but argues Appellant still had control over it.  While agreeing

that mere presence and knowledge of an illegal substance has been found to

be insufficient to establish constructive possession, Appellee argues the

evidence at trial established that Appellant had control over the substance. Appellee emphasizes that through the testimony of Sgt. Dillard, the essential elements of the offense were established beyond a reasonable doubt. Appellee concludes the jury did not clearly lose its way.

{¶13} "In determining whether a defendant knowingly possessed a controlled substance, it is necessary to examine the totality of the facts and circumstances surrounding its discovery." *State v. Ruppen,* ¶ 28, quoting *Pullen* at ¶ 37; citing *State v. Teamer*, 82 Ohio St.3d 490, 492, 696 N.E.2d 1049 (1998); *State v. Pounds,* 2nd Dist. Montgomery No. 21257, 2006-Ohio-3040. "[P]ossession" is defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). *State v. Criswell,* 4th Dist. Scioto No. 13CA3588, 2014-Ohio-3941, at ¶ 9. "Possession may be actual or constructive." *Id.,* quoting *State v. Moon,* 4th Dist. Adams No. 08CA875, 2009-Ohio-4830, ¶ 19, citing *State v. Butler*, 42 Ohio St.3d 174,175, 538 N.E.2d 98 (1989) ("[t]o constitute possession, it is sufficient that the defendant has constructive possession"). " 'Actual possession exists when the circumstances indicate that an individual has or had an item within his immediate physical possession.' " *Criswell, supra,* at ¶ 10, quoting, *State v.*

*Kingsland,* 177 Ohio App.3d 655, 2008-Ohio-4148, 895 N.E.2d 633, ¶ 13 (4th Dist.), quoting *State v. Fry,* 4th Dist. Jackson No. 03CA26, 2004-Ohio-5747, ¶ 39. "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *Criswell, supra,* quoting *State v. Hankerson,* 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus; *State v. Brown,* 4th Dist. Athens No. 09CA3, 2009-Ohio-5390, ¶ 19. For constructive possession to exist, the state must show that the defendant was conscious of the object's presence. *Hankerson* at 91; *Kingsland* at ¶ 13. Both dominion and control, and whether a person was conscious of the object's presence may be established through circumstantial evidence. *Crisell, supra; Brown* at ¶ 19. "Moreover, two or more persons may have joint constructive possession of the same object." *Criswell, supra.*

{¶14}  "Although a defendant's mere proximity is in itself insufficient to establish constructive possession, proximity to the object may constitute some evidence of constructive possession. * * * Thus, presence in the vicinity of contraband, coupled with another factor or factors probative of dominion or control over the contraband, may establish constructive possession." *Criswell, supra*, at ¶ 11, quoting *Kingsland* at ¶ 13.

{¶15} At Appellant's trial, the State presented only the testimony of Sgt. Dillard and "Exhibit A, "the Ohio State Highway Patrol lab report which demonstrated that the white substance in the baggie was crack cocaine.[1] Sgt. Dillard testified he first noticed Appellant on State Route 104 in Pickaway County when he "clocked" him going over the speed limit at 61m.p.h. He initiated a traffic stop and activated his lights. As he pulled up behind the vehicle, he could see the right front passenger, a female, arch her back severely and appear to be shoving something inside her groin area.

{¶16} Sgt. Dillard approached the passenger's side of the vehicle. He further testified when he knelt down toward the lowered passenger window, he could detect the odor of burnt marijuana coming from the vehicle. He immediately radioed back to the patrol post for assistance and waited. When Lt. Cassandra Kocab arrived, they removed both Appellant, the driver, and Zanisha Marshall, the passenger, and secured them in separate cruisers.

{¶17} Sgt. Dillard testified the officers searched the vehicle based upon the odor of marijuana. They found a small baggie of marijuana in Marshall's purse. They found Cigarillo cigars and digital scales in the glove box. Based on those findings, they searched the occupants.

---

[1] Sgt. Dillard testified the report showed "generally speaking, 2.73 grams of crack cocaine."

{¶18}  Sgt. Dillard testified Appellant and Marshall were asked if they had other contraband on their persons.  Both denied having any illegal items.  Sgt. Dillard further explained to them that if anything contraband was hidden, once they arrived at the jail it became a felony charge of "taking contraband into a prison or jail facility."[2]

{¶19}  The parties, as previously indicated, had been placed in separate cruisers.  Lt. Kocab performed the search of Marshall.  Sgt. Dillard testified that marijuana was removed from Marshall's bra, and the crack cocaine was removed from Marshall's vagina.  Sgt. Dillard then showed Appellant the baggie and asked Appellant if he knew that Marshall possessed the cocaine.  Sgt. Dillard testified he could not recall what Marshall told him at that time.

{¶20}  State's Exhibit A, the lab report, was admitted into evidence.  The parties stipulated to Exhibit A's authenticity and admissibility.

{¶21}  Sgt. Dillard further testified Appellant and Marshall were taken to the jail.  They were both charged with possession of marijuana and crack cocaine.  Sgt. Dillard's direct examination essentially concluded with this testimony:

---

[2] R.C. 2921.36 provides that illegal conveyance of drugs onto the grounds of a detention facility or institution is a felony of the third degree.

"I was typing the charges up inside the room, and as I walked out, the defendant, Mr. Corson, advised me that he didn't want, I believe it was his girlfriend at the time, whatever they were, he didn't want her taking the charge for it. He said he wanted to take the charge, said it was his and to charge him with it so she didn't have to go to jail."

{¶22} On cross-examination, Sgt. Dillard clarified that when he approached the vehicle and saw Marshall arching her back, she was raised, with her head behind the head rest, almost in the back seat. He considered her to be making a "furtive movement." Sgt. Dillard remembered Marshall wore jeans and a shirt. Because Appellant and Marshall were in separate vehicles, Sgt. Dillard testified he had no way of knowing if Appellant saw Marshall remove the drugs from her body during her search. However, when Sgt. Dillard took the baggie to Appellant and questioned him, Appellant denied having knowledge.

{¶23} Sgt. Dillard acknowledged on cross-examination that Marshall owned the vehicle. He testified there was marijuana in her purse. He also acknowledged he found no contraband on Appellant. Sgt. Dillard testified Appellant was not immediately cooperative, and his demeanor seemed to change when they arrived at the jail.

{¶24} With the conclusion of Sgt. Dillard's testimony, the State rested. Appellant did not present evidence and made a Crim.R. 29 motion which was denied. During closing argument, Appellant emphasized:

(1) Marshall owned the vehicle;

(2) The crack cocaine was hidden inside Marshall;

(3) The marijuana was inside Marshall's purse and bra;

(4) The digital scales were found in the glove box; and,

(5) The Cigarillo cigars were found next to Marshall in the passenger seat.

In closing, counsel argued that the only evidence linking Appellant to the cocaine hidden inside his "fiancé" was his statement, allegedly made at the jail, that he would take responsibility for the charge.

{¶25} The trial court proceeded to give the jury Standard Ohio Jury Instructions, which included instructions on the burden of proof, direct and circumstantial evidence, inferences from facts, and credibility. The trial court defined "knowingly" and "possession." "Possession" was defined as follows:

> "Possess or possession means having control over a thing or substance but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."

The jury returned a verdict of guilty. Having reviewed the record, we do not find this to be the exceptional case where the evidence weighs heavily against conviction.

{¶26} In this case, Appellant's conviction is based on direct and

circumstantial evidence. Here, direct evidence links Marshall to the crack cocaine. The direct evidence is that the other drugs and drug instruments were within Marshall's reach. Further, the crack cocaine was located inside Marshall's vagina, not a purse or baggie resting in plain view. Appellant argues there is no way he could have had constructive possession of the cocaine even if he had known of its existence.

{¶27} However, having examined the record, weighed the evidence, and considered the credibility of the witnesses, we find a rational basis exists to support the jury's finding of guilty. To begin, although Appellant did not own the vehicle, the fact he was driving it provides some indication of dominion and control. See *Criswell*, *supra,* at ¶ 25. See *Brown,* 4th Dist. Athens No. 09CA3, 2009-Ohio-5390, at ¶ 21 (as the driver, the defendant's "possession of the keys provided a strong indication of control over the drugs found in the automobile"); *State v. Chaffins,* 4th Dist. Scioto No. 13CA3559, 2014-Ohio-1969, ¶ 33 (a fact finder may conclude that a defendant who exercises dominion and control over an automobile also exercises dominion and control over illegal drugs found in it). Here it can be inferred that Appellant's driving the vehicle provides some indication of dominion and control over any occupants or contents brought into the vehicle.

**{¶28}** Second, the evidence demonstrates Appellant and Marshall were involved in some sort of romantic relationship. Sgt. Dillard's testimony indicated Marshall was Appellant's girlfriend. Defense counsel referenced Marshall as Appellant's fiancé. It has been held, when there was additional other evidence, despite a defendant's lack of presence on the premises when authorities discovered an active methamphetamine lab, that given parties' romantic relationship, a jury could reasonably infer that both parties engaged in the manufacture of methamphetamine. See *Wickersham, supra* at ¶ 36; See *State v. Jackson,* 9th Dist. Summit Nos. 22378 and 22394, 2005-Ohio-5184 (determining that cohabitating man and woman held to each have constructive possession of cocaine found in plain view in closet of only bedroom, where both male and female clothes were located); *State v. Smith,* 3rd Dist. Paulding No. 11-95-7 (Nov. 17, 1995) (observing that large quantity of narcotics found throughout house, including defendant's bedroom, constituted circumstantial evidence of defendant's knowledge of and control over those narcotics). Although we cannot say the crack cocaine in Marshall's vagina was in plain view, from the fact that Marshall and Appellant had some sort of romantic relationship, the jury could infer Appellant had some knowledge of the crack cocaine.

{¶29}  Furthermore, the parties' romantic relationship, coupled with Sgt. Dillard's uncontroverted testimony that Marshall made a "furtive movement," apparently arching her back to insert the crack cocaine baggie in her vagina, provides a strong inference that Appellant had knowledge of the crack cocaine.  We cannot know whether Appellant asked Marshall to hide the crack cocaine when he realized they were being pulled over by Sgt. Dillard.  However, if Marshall somehow brought crack cocaine to the vehicle without Appellant's knowledge, Appellant certainly would have been made aware of the crack cocaine after Marshall made so exaggerated a movement as to lower her jeans, arch her back so extremely that her head was sticking into the back seat, and insert a baggie holding 2.73 grams of a white substance into her vagina.  Yet, when interacting with Sgt. Dillard at the scene, Appellant made no attempt to inform Sgt. Dillard of an illegal act he suddenly observed and did not wished to be associated with.

{¶30}  The jury was tasked with considering all the evidence. While the facts that (1) Appellant was driving the vehicle; (2) Marshall and he had a romantic relationship of some sort; and (3) Marshall's furtive movements were made in his presence are circumstantial evidence, the jury also had direct evidence in the form of the testimony provided by Sgt. Dillard, that Appellant told him that the crack cocaine "was his, and he wanted to take

charge of it."  While Appellant did not testify, which was his constitutional right, or present other contradictory evidence, defense counsel in closing attempted to cast doubt on the truthfulness of this evidence by referencing it as "the statement that he supposedly made in jail."  And counsel attempted to downplay the alleged statement as some chivalry on the part of Appellant, in attempting to keep his fiancé from going to jail or being charged.  We note first that the statements of counsel are not evidence and the jury was instructed as such.  Removing counsel's attempt to plant reasonable doubt through his closing statement,  the jury was left to consider only the evidence provided by Sgt. Dillard.  Simply put, the jury had Sgt. Dillard's uncontroverted testimony: "He said he wanted to take the charge, said it was his and to charge him with it so she didn't have to go to jail." Appellant's confession to Sgt. Dillard may be construed as direct evidence of his guilt.  See *State v. Watts,* 1st Dist. Hamilton No. C-810091,1981 WL 10176, fn.1 (Dec. 23, 1981).

{¶31}  " 'While the jury may take note of inconsistencies and resolve or discount them accordingly, * * * such inconsistences do not render defendant's conviction against the manifest weight or sufficiency of the evidence.' " *State v. Proby*, 10th Dist. Franklin No.15AP-1067, 2015-Ohio-3364, ¶ 42, quoting *State v. Gullick*, 10th Dist. Franklin No. 13AP-317,

2014-Ohio-1642, ¶ 10, quoting *State v. Nivens,* 10th Dist. Franklin No. 95APA09-1236 (May 28, 1996). "A jury, as the finder of fact and the sole judge of the weight of the evidence and the credibility of the witnesses, may believe or disbelieve all, part, or none of a witness's testimony." *Proby, supra,* quoting *State v. Antill,* 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964). A conviction is not against the manifest weight of the evidence because the jury believed the state's version of events over the appellant's version. *Id.* at ¶ 11, citing *State v. Houston,* 10th Dist. Franklin No. 04AP-875, 2005-Ohio-449, ¶ 38. A reviewing court must give great deference to the jury's determination of witness credibility. *Id.,* citing *State v. Chandler,* 10th Dist. Franklin No. 05AP-415, 2006-Ohio-2070, ¶ 19.

{¶32} For the foregoing reasons, we find a rational basis exists in the record for the jury's decision in this matter. The jury was in the best position to weigh the evidence and resolve factual differences. We do not find it lost its way and created a manifest miscarriage of justice. As such, we find no merit to Appellant's sole assignment of error which is hereby overruled. We affirm the judgment of the trial court.

**JUDGMENT AFFIRMED.**

# JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hoover, P.J. & Abele, J.: Concur in Judgment and Opinion.

For the Court,

BY:  _____
Matthew W. McFarland,
Administrative Judge

### NOTICE TO COUNSEL
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**